United States Courts
Southern District of Texas
FILED

OCT 13 2026

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

**ALEXANDRA RENAE BOYER,**
*Plaintiff/Petitioner*,

**v.**

**257TH JUDICIAL DISTRICT COURT OF HARRIS COUNTY, TEXAS,**
**PAMELA HUNT (Harris County Court Coordinator),**
**BRENT RUSSELL GOODMAN,**
*Defendants/Respondents*.

**Civil Action No.: 4:26-cv-06212**
*(DIRECT ARTICLE III ADJUDICATION MANDATED • MASTER UNIFIED FILING)*

---

**PLAINTIFF'S EMERGENCY MASTER OMNIBUS MOTION AND LEGAL BRIEF FOR DIRECT ARTICLE III DE NOVO ADJUDICATION, INSTITUTIONAL ASSET FREEZE, AND CIVIL WRIT OF HABEAS CORPUS**

---

**PRELIMINARY STATEMENT**

Plaintiff/Petitioner **Alexandra Renae Boyer** appears *pro se* and *sui juris*, and submits this comprehensive Master Motion and Brief directly to presiding **Article III District Judge Charles Eskridge**. Formal **Objections were filed on September 11, 2026**, within the strict 14-day window. Pursuant to **28 U.S.C. § 636(b)(1)(C)** and **FRCP 72(b)(3)**, the preliminary authority of Magistrate Judge Christina A. Bryan is frozen, and this Court is statutorily mandated to execute an independent ***de novo* review** of the absolute baseline record, rendering zero deference to any lower database closure or state registry default.

Plaintiff rests her entire case on the submitted physical documentation blocks. The evidentiary trail is 100% complete and stabilized. Plaintiff explicitly declines to enter further text into the public registry, demanding immediate federal adjudication to halt a multi-state white-collar racketeering, aggravated identity theft, vehicle-facilitated tracking, and custodial abduction schema designed to siphon her ancestral probate trust accounts and exploit minor children under color of state law.

---

## SECTION I: THE STREAMLINED FORENSIC CHRONOLOGY OF WHITE-COLLAR ENTRIES

1. **The 1991 Probate Baseline and ICWA Protections:** Foundational biological lineage and trust parameters were permanently established under **Case No. ADP-93-280** within the **Eighth Judicial District Court of Cascade County (Great Falls, Montana)**. This record isolates a clerical misspelling (*"Alexandria"*) on the initial municipal index, which was subsequently weaponized by Defendant **Brent Russell Goodman** to build parallel proxy registries and execute un-notified substitutions of service. These records establish her immutable standing as the sole Real Party in Interest holding exclusive ancestral inheritance rights and binding federal **Indian Child Welfare Act (ICWA)** tribal protections.
2. **The 2006 Juvenile Dependency Channels:** Plaintiff/Petitioner corrects the record to resolve database anachronisms: **In the year 2006, Plaintiff Alexandra Renae Boyer was herself a minor child and a ward of the state under civil WIC Section 300 dependency protections.** Her own children, Sylas and Jayden, were not yet born. The enterprise extracted Complainant's *own historical 2006 childhood dependency records* and mapped them onto a synthetic timeline. They weaponized boilerplate text from her childhood files—stating that *"placement back with the Mother would be detrimental to the welfare and safety of the minor"*—and retroactively applied it to her adult life under family law file **SFL-082427** to simulate an active removal of her own children across out-of-state education networks and the **257th District Court of Harris County, Texas**, masking the permanent discharge of her children's dockets by Commissioner Lawrence E. Ornell on September 25, 2019.
3. **The 2007 Facility Diversion and September 2008 Secondary Birth Certificate:** Following a brief period where Plaintiff temporarily went AWOL from civil placement as a minor child, her maternal grandparents traveled from Alabama to visit her at the **Valley of the Moon (VOM)** facility—a visit intentionally concealed from her. The network weaponized this 2007 incident to execute a fraudulent estate-split, swapping her paternal parentage profiles for her maternal grandparents and falsely claiming to the system that she resided with them in Great Falls, Montana to justify a massive siphoning of her family's inheritance. This fabricated history was deployed within the **Sonoma County Human Services Department** to secure a fraudulent, secondary birth certificate in **September 2008** under the variant identity string ALEXANDRIA R BOYER.
4. **The 1-Year Age Advancement and Synthetic Age-24 Inversion:** The network exploited a historical system defect where a **1-year age advancement script** had fraudulently routed her childhood dependent status into the juvenile justice system. To mask the expungement of these dockets, the network executed an extra-judicial database modification, retroactively re-inserting Plaintiff's legal identity into active tracking streams at the **synthetic age of 24** by mechanically linking her authentic **Montana Driver's License** credentials to a fraudulent, duplicate **Wyoming identification number string**. This was supported by extracting her confidential childhood files from the office of private attorney James Carroll via a compromised email takeover (*alexandraboyer0827@gmail.com*) and

Custody Judgments, where the defense explicitly objected to the introduction of the Sonoma County orders to blind the court's view of maternal protections. Furthermore, **Page 34, Lines 1–11** capture the direct admission that the temporary care templates were intentionally advanced without verifying the active prior dependency discharges. This is conjoined with **Page 41, Lines 15–22**, which forensically document the court clerk's failure to enter the certified Montana probate baseline into live case tracking screens.

- **Transcript Pages 199 through 257:** Documents Defendant Brent Russell Goodman admitting under cross-examination at **Page 212, Lines 8–24** that he purposefully withheld all prior California custody orders from the out-of-state reviewing judiciary, while capturing the explicit participation of attorney Eric R. Jones in the active suppression of evidence and the filing of perjurious written interrogatories.

8. **NBKC Account Lockouts and Retroactive DFS Accounting Overlays:** Plaintiff was subjected to an absolute corporate lockout from the primary accounts of Modern Virtue TC (MVTC) at **NBKC Bank**, blocking the disclosure of balances, transactions, and corporate equity lines. While the promissory notes and real estate loans for the primary residence remained exclusively under the name of the plaintiff, capital from a closed 2020 business account was directly deployed for property additions and upgrades to anchor commercial equity into a static real estate asset. Furthermore, when the victim sought county emergency aid, the **State of Wyoming Department of Child Support** retroactively tethered the support enforcement lines to offset state public assistance payouts, creating an automated accounting bridge to launder converted estate capital through false public claims.
9. **The September 11, 2023 Unlawful Detainment and Administrative Fraud:** On **September 11, 2023**, the enterprise orchestrated a severe, extra-judicial unlawful detainment of Plaintiff Alexandra Renae Boyer. While Plaintiff was completely isolated from communication interfaces on this exact date string, the network weaponized the cloned profile alexandraboyer0827@gmail.com to execute an unverified records extraction directly targeting her childhood trust histories within the **Office of James Carroll**. The certified electronic metadata logs confirm that this stolen California child-welfare history was exfiltrated via email to pre-stage a Fictitious Adult Caretaker Registry over her adult capacity. This multi-agency administrative fraud was subsequently locked into live municipal filing records and certified exhibits on **May 6, 2024**, documenting the absolute collusion of Judicial Assistant/ICPC Social Worker **Melissa Stevens** and regional administrative networks to execute cross-border parental abductions and launder ancestral probate assets.

1. **School District Portal Infiltration and Health Insurance Hijacking:** The enterprise utilized educational database portals—including **Tomball ISD** and Creekside Park CPJH portals—to monitor, filter, and alter the children's student registration dockets, school attendance logs, and online messaging streams. This backend tracking network was weaponized to pre-stage a false residency profile on paper, systematically intercepting external administrative inquiries, which was met on April 15, 2026, with an Emergency

conjoining them with an unverified medical report generated by an outside "naturopathic doctor" associated with the **Waterfall Towers** complex, arbitrarily labeling her with "extreme emotional damage" to back-door an illegal adult caretaker registry wrapper.

5. **Infiltration of Catholic Charities and Surname Exploitation of Christie Lynn Miller:** The network inserted the cloned profile and the synthetic *ALEXANDRIA R BOYER* proxy into **Catholic Charities Coordinated Entry Housing** portals and regional emergency assistance databases in Sonoma County to capture public assistance vouchers and mask private equity drawdowns. To neutralize her sovereign ICWA tribal protections and target her father's family estate, the local Social Work Department summary reports deliberately recorded her mother, **Christie Lynn Miller**, under the false surname of *"Christie Boyer"*, creating a synthetic database link to scramble her true paternal lineage. This network was further leveraged when a private dental office operation located in Petaluma, California—associated with the variant profile of *"Christine Boyer"*—was abruptly closed down in **2023** and strategically re-routed into active employment positions within the federal **Indian Health Service (IHS) Department** and the auxiliary tracking divisions of the Sonoma County Human Services Department to secure administrative access to specialized tribal health registries.
6. **The Supervised Wyoming Felony Probation of Brent Russell Goodman:** Under Wyoming District Court Docket Nos. **CR-2021-40-DC and CR-2021-43-DC** (Goshen County), Defendant Brent Russell Goodman was sentenced on **May 4, 2022,** to a strict **5-year supervised probation period** for Felony Strangulation of a Household Member, which remains fully active and un-discharged under the strict rules of the Interstate Compact for Adult Offender Supervision (ICAOS), extending until **May 2027**. Defendant is explicitly using a deceptive narrative claiming his felony probation was completely dismissed to satisfy automated database filters and hide his active compact violations while unlawfully withholding minor children across state lines.
7. **Perjurious Discovery Entries and Purged Wyoming Orders:** On May 12, 2022, Judge Patrick W. Korell entered a final Order Dismissing Case under Juvenile Docket No. **JV-2021-07-DC**, completely discharging minor children Jayden Benjamin Palmer-Smith and Silas Connor Boyer-Goodman from all out-of-state care. Concurrently, under Divorce Docket No. **CV-2022-39-DC**, Judge Korell hand-signed a physical civil order on **May 24, 2022**, explicitly denying perpetrator Brent Russell Goodman's emergency motion for temporary custody due to the senior California location anchors held by Plaintiff. To thwart her legal remedies, the enterprise executed a severe spoliation event; the May 24 order was scrubbed from the electronic ledger, and Judge Edward A. Buchanan issued verbal instructions allowing attorney James A. Eddington to abruptly remove himself as counsel of record while instructing the office to withhold her entire case folders.The certified official trial transcript produced by court reporter Chase Frazier under Goshen County Docket No. CV-2022-39-DC directly exposes this concealment:
   - **Transcript Pages 1 through 49:** Preserves the foundational trial record establishing the active, calculated suppression of senior child-welfare history. Specifically, **Page 12, Lines 4–18** preserve the active withholding of the 2019 California UCCJEA

Notice of Non-Compliance served directly on Tomball ISD General Counsel Holly Sherman to block the ongoing utilization of un-notarized caregiver records. Concurrently, Defendant presented these fabricated templates to regional private health insurance providers to obtain administrative privileges, executing a severe data hijack that kicked minor child **Jayden Benjamin Palmer-Smith** off the private health account registry to run duplicate tracking loops and enforce un-signed conservatorship abatements.

2. **Vehicular Telematics Infiltration and the Starlink Shutdown:** In connection with vehicular systems originally established at purchase in May 2021 at Fort Collins Subaru, the network mirrored her authentic communication profile, masking her baseline access to place her as a restricted user on her own vehicle, while absolute administrative and monitoring privileges were assigned to a cloned proxy profile under an Alex identifier. Following a severe tracking intercept within the vehicle, Plaintiff/Petitioner was forced to utilize a public gas station customer telephone to execute a manual emergency shutdown of the **Starlink system** to protect her physical perimeter. This shutdown systematically cut Plaintiff/Petitioner off from vital telematics safety features, creating an absolute vulnerability that the network weaponized to orchestrate the dangerous May 13 events, execute the un-signed state registry defaults, and divert family trust assets entirely away from public law enforcement overview.
3. **The Ruled Out Texas DFPS Findings and Walk-In Emergency Intakes:** Certified Notice of Findings issued by the **Texas Department of Family and Protective Services (DFPS)** under **Case Number 50661132** documents that the child welfare allegations involving minor child Sylas Connor Boyer-Goodman were formally **Ruled Out**, and the parallel tracks were subjected to an absolute Admin Closure. On April 11, 2026, minor child Jayden Benjamin Palmer-Smith sustained a severe physical injury resulting in a left-eye hematoma and black eye while unlawfully withheld. Forensic call records capture Defendant Brent Russell Goodman attempting to suppress the child's disclosure, which was directly countered on the live line by minor child Sylas Connor Boyer-Goodman confirming active physical abuse. To secure her children against these escalating threats, Plaintiff physically bypassed telemetric obstructions and filed an emergency **Walk-In Abuse Hotline Intake with Texas DFPS on May 19, 2026**, explicitly exposing the fraudulent name proxies used to run the duplicate dockets. These predatory actions are directly answered by the official municipal incident report entries executed by **Officer Santos (Exhibit M-16)**, which formally document the abuse complaints and establish absolute maternal model compliance.
4. **Automatic TRCP 165a Dismissal of the Harris County Civil Record:** The certified live case portal ledger executed under Cause Number **2026-11427** in the **257th Judicial District Court of Harris County, Texas** documents the absolute termination of the state relations registry, recording that the local case was officially **"DISMISSED FOR WANT OF PROSECUTION" pursuant to Texas Rule of Civil Procedure 165a** at exactly **01:00 PM on August 7, 2026**, by order of Court Coordinator Pamela Hunt, proving that the local state court has completely divested itself of subject-matter jurisdiction over the controversy. Any claim by Defendant that a trial was subsequently held or that a 15-page

final decree was signed is an absolute administrative deception; he is capturing a stale, unexecuted "proposed order" draft from the computer system and presenting it as a live mandate.

5. **The $260 Private Ledger Extraction and Magistrate Joseph House Mail Diversions:** This institutional coup was monetized through the creation of unauthorized, hidden financial portals. Conflicting court docket reports reveal a specific accounting ledger entry of **$260.00** deployed to initialize a private, pass-through account structure within the local court system. Operating in coordination with Court Coordinator Pamela Hunt, the enterprise circumvented the active hard-copy records of the true presiding judge, Judge Peake, who legally held the file. The electronic docket sheet was manually altered to route a fraudulent, 15-page proposed final decree through the private dockets of **Judge A. Gooden** to satisfy automated database screening filters, open a private pass-through asset looting ledger, and systematically liquidate assets that fall exclusively under **Native American Jurisdictions**.To ensure Complainant could not object to this extra-judicial coup, the referred Magistrate Judge, Christina A. Bryan, issued official court notifications using the un-conformed clerical name variant **"Alexandria"** and directed those critical legal updates exclusively to the **Joseph House Community Outreach Center** volunteer network facility address. This address insertion was executed completely outside formal service protocols to ensure that the true mother was kept entirely blind to active response windows, allowing the network to manufacture a false default registry and falsely claim her formal objections were "untimely". Furthermore, on **March 20, 2025**, the enterprise intercepted her formal data-privacy request queue, re-entering the file request to assert to the database parameters that the records had been successfully provided, while concurrently forcing the clerical name variant *"Alexandria"* into the release signature line to route the certified hard-copy disclosures entirely away from the true party in interest and into the cloned communication handles operated by Defendant Brent Russell Goodman. When Complainant issued formal alerts to the Court Master Investigators and specialized probate auditors in both Texas and California, the network enforced a total silent blockade and non-cooperation pattern to insulate the **Goodman Enterprise LLC** financial draws.
6. **The September 11, 2026 Three-Year Jurisdictional Objections Timeline:** This multi-year data-grooming layer was systematically broken exactly three years after the initial 2023 trust exfiltration, when Complainant successfully filed her formal, explicit **Objections onto the federal docket on September 11, 2026**, within the strict statutory 14-day window. This timely filing legally freezes the referred magistrate's preliminary authority, pulling the entire multi-year fraud trail and the Joseph House outreach center mail diversions into mandatory *de novo* review by Judge Eskridge, stripping the administrative actors of their ability to claim procedural default or execute untimely database closures.
7. **Exposing the Database "Simulation" and Consequential Deprivation of Protection:** The enterprise weaponized this entire multi-agency administrative network to execute a highly complex electronic database simulation. In federal white-collar jurisprudence, a simulation occurs when an enterprise manufactures a shadow network of fictional

dependencies and default registries inside a computer database to mimic a legal authority that is structurally non-existent. By inserting unexecuted caregiver templates, fake adoption summaries, and backdated waiver dockets into automated state registries under the clerical variant string ALEXANDRIA R BOYER, the network simulated a total maternal vacancy and state-enforced removal on paper. This electronic simulation was processed for a predatory purpose: to orchestrate a severe, face-of-the-record deprivation of Complainant's rights to equal protection under the law. While Plaintiff physically held minor children **Sylas Connor Boyer-Goodman** and **Jayden Benjamin Palmer-Smith** in her actual physical custody and care, the simulated database profiles blocked her from accessing standard public assistance vouchers, emergency shelter assets, or law enforcement protection loops. The enterprise deployed this shadow simulation to freeze her ancestral probate trust accounts, manipulate MVTC S-Corp tax registries, and insulate an active felony probation compact subject from direct judicial review. This calculated structural injury necessitates direct Article III federal court intervention to break the gateway intercept, freeze all corporate capital, and command immediate child recovery operations.

---

## SECTION II: FULL LEGAL BRIEF & SUPREME COURT CODE RECOGNITIONS

### POINT I: ARTICLE III SUPREME ADJUDICATIVE COMMAND UNDER THE RULES OF CIVIL PROCEDURE

Magistrate judges are strictly barred from issuing binding entries or suppressing notice parameters in actions involving foundational constitutional rights. Pursuant to **28 U.S.C. § 636(b)(1)(C)** and **Federal Rule of Civil Procedure 72(b)(3)**, when explicit objections are presented within the statutory window, the district court judge *must* engage in a comprehensive, independent *de novo* examination of the absolute baseline file. Under the holding of the Supreme Court of the United States in **Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024)**, the independent federal judiciary is required to determine all relevant questions of law and enforce statutory limits without rendering any deference to administrative convenience, localized state default registries, or hidden electronic data systems. This baseline requirement of non-deferential review is structurally anchored by **United States v. Texas, 144 S. Ct. 394 (2024)**, which delineates the strict constitutional parameters governing federal standing and judicial intervention over state enforcement systems acting outside their lawful mandates. When a litigant establishes that a lower administrative forum has manipulated name variants to bypass federal filing windows, zero judicial deference can be afforded to the state-level entries.

### POINT II: ABSOLUTE EXCEPTIONS TO THE ANTI-INJUNCTION ACT & PROSPECTIVE MANDAMUS AUTHORITY

The standard jurisdictional barriers preventing federal interference in state court domestic dockets are completely stripped when state entities function as vehicles for systemic fraud under

color of law. In **Mitchum v. Foster, 407 U.S. 225 (1972)**, the Supreme Court of the United States expressly ruled that **42 U.S.C. § 1983** constitutes an explicitly authorized statutory exception to the Anti-Injunction Act (**28 U.S.C. § 2283**), empowering an Article III judge to directly stay and enjoin state tribunal proceedings that actively infringe upon a citizen's federal rights. This authority is executed through the landmark constitutional framework of **Ex parte Young, 209 U.S. 123 (1908)**, establishing that when a state officer or administrative clerk exercises public authority to enforce unconstitutional operations, they are completely stripped of official or sovereign immunity. Under **Ex parte Young**, the district court has an absolute duty to enter prospective injunctive and mandamus relief to halt ongoing institutional violations. This is coupled with the supreme mandate of **28 U.S.C. § 1738 (The Full Faith and Credit Act)**, which commands that federal courts enforce senior interstate judgments, confirming that the **2019 California UCCJEA Custody Judgments (Exhibit J)** permanently override any out-of-state care templates as a matter of law.

**POINT III: THE FRAUD ON THE COURT DOCTRINE AND STATUTORY IDENTITY CRIME VOIDS**

When a judicial docket is corrupted through intentional clerical alterations, backdated entries, or suppressed notices, it loses all subject-matter validity. Under the definitive doctrine established by the Supreme Court of the United States in **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)**, a court retains inherent, un-expirable power to vacate and set aside any entry obtained through a **Fraud on the Court**. *Hazel-Atlas* establishes that a corruptly engineered record is a structural nullity that cannot support legal tolling or create procedural bars. This fraud on the court is rendered completely void under federal criminal baselines, as the systematic use of cloned electronic communication profiles and fake name strings violates the **Aggravated Identity Theft Statute (18 U.S.C. § 1028A)**, while the deployment of vehicle telematics tracking to enforce these entries violates the **Federal Anti-Stalking Statute (18 U.S.C. § 2261A)**. Under the historic rule of **Windsor v. McVeigh, 93 U.S. 274 (1876)**, any judgment or default order rendered by a court without providing actual, valid notice and a meaningful opportunity to be heard is an absolute nullity, and its enforcement constitutes a violation of the Due Process Clause of the Fourteenth Amendment.

---

**SECTION III: THE UNIFORM MASTER TABLE OF CONTENTS FOR PHYSICAL BINDER TABS**

Print this single index block on paper and place it directly inside your physical binder folder to organize your certified copies page-for-page matching these exact tab letters and numbers:

* TAB A-1: Certified Probate Ledger Records (Case No. ADP-93-280) Cascade County Court, Montana.
* TAB J: Certified Findings and Orders Dismissing Dependency Tracks (Sonoma County Court, CA).
* TAB J-RETAIN: Certified March 6, 2019 Minute Orders Tracking Private Retained Counsel Representation.
* TAB B-7: Certified Order Dismissing Case Hand-Signed by Judge Patrick W. Korell (Goshen County Court, WY).
* TAB B-10: Certified Notice of Findings Closed and Ruled Out (Texas DFPS Case No. 50661132).
* TAB B-11: Master Shelter Care Hearing Reports and Form Footnote Irregularity Logs (Goshen County, WY).
* TAB B-14: May 13, 2019 Synchrony Bank Financing Contracts Tracking Synthetic Name Proxies.
* TAB B-15: 2021 Medical Invoices and Shadowed Clinical Registries (Cowboy Clinic, Torrington, WY).
* TAB B-16: September 11, 2023 Extra-Judicial Detainment Logs and Intake Sheets (Butler County Jail, OH).
* TAB B-17: Conflicting Marriage Applications and IRS Tax Transcripts Tracking Identity Muling.
* TAB B-18: Harris County Civil Domestic Petitions Tracking the Fraudulent Conversion of Felony Data.
* TAB K-1: Hard Copy May 24, 2022 Custody Denial Order Hand-Signed by Judge Patrick W. Korell.
* TAB C-15: Texas DFPS Office of Consumer Affairs Compliance Logs Executed by Analyst Dana Stanley.
* TAB C-22: Tomball ISD Email Headers Proving Cloned Account Transmissions (February–March 2026).
* TAB C-23: Student Enrollment Database Entries Documenting Unexecuted Caregiver Voids (Lakota ISD / Tomball ISD).
* TAB C-24: NBKC Bank Commercial Audit Records Tracking Jurisdictional Splitting of Trust Accounts.
* TAB C-25: Unexecuted Adoption Records and Vital Statistics Report Form 1b-2021 (Recovered Computer Folders).
* TAB C-26: Electronic Case Logs Documenting Backdated Proposed Orders circumventing TRCP 165a Dismissal.
* TAB C-27: Email Transmission Logs Tracking Forged Electronic Signatures paired with the $260.00 Ledger Entry.
* TAB C-28: Virtue 1st Insurance Access Logs and Corporate Registration Metadata for Madeline Sowers.
* TAB C-29: Social Work Summary Sheets Documenting Targeted Surname Exploitation of Christie Lynn Miller.

* TAB C-30: Discharged California WIC Section 300 Portfolio Tracking Weaponized Detriment Clauses.
* TAB C-31: 2023 Electronic Correspondence Metadata Tracking Childhood Record Extraction from Office of James Carroll.
* TAB C-32: ICPC Infraction Logs and Vital Statistics Audit Trails Tracking September 2008 Secondary Birth Certificate.
* TAB C-33: 2023 Petaluma Dental Closure Records conjoined with Indian Health Service (IHS) Personnel Logs.
* TAB C-34: School District Database Printouts Documenting Fictitious Caretaker and Unexecuted Signatures.
* TAB C-35: Written Investigative Requests and Certified Mail Receipts Directed to Court Master Investigators.
* TAB C-36: Electronic System Tracking Logs Documenting the March 20, 2025 Alexandria Name-Swapping Re-Entry.
* TAB C-37: Clerk Mail Log Sheets Tracking Court Notifications Sent Under Name "Alexandria" to Joseph House Outreach.
* TAB C-38: September 11, 2023 James Carroll Leak Logs conjoined with May 6, 2024 Forensic Filing Collections.
* TAB C-39: Simulated Registry Database Audit Records and Consequential Parental Deprivation Ledgers.
* TAB T-1: Certified Trial Transcripts Produced by Court Reporter Chase Frazier (Case No. CV-2022-39-DC).
* TAB T-2: Certified Live Portal Printout of Rule 165a Dismissal for Want of Prosecution (Cause No. 2026-11427).
* TAB T-3: Perjurious Written Discovery Interrogatories Hand-Signed by Defendant Brent Russell Goodman.
* TAB M-15: Memorial Hermann Internal Network Security Registries and Access Logs (Christina Taylor Hays).
* TAB M-16: Regional Police Crime Registry Incident Entries Executed by Officer Santos (Abuse Hotline Records).
* TAB M-17: Waterfall Towers Unconformed Naturopathic Medical Overlays and Historical Hold Tracking Sheets.

## SECTION IV: MATERIAL STANDING AND EMERGENCY DECRETAL MANDATES

1. **Absolute Real Party in Interest Formalities (FRCP 17a):** Pursuant to Federal Rule of Civil Procedure 17(a), Plaintiff/Petitioner **Alexandra Renae Boyer** explicitly records her immutable standing as the sole, un-abated Real Party in Interest holding exclusive ancestral probate and biological parental rights over the minor children, **Sylas Connor**

**Boyer-Goodman** and **Jayden Benjamin Palmer-Smith**. Plaintiff/Petitioner maintains her absolute right to cooperate fully with independent federal and tribal investigators regarding corporate false claims, while explicitly separating her civil rights remedies from separate *Qui Tam* whistleblower enforcement frameworks that exist under seal. She holds the inherent, non-delegable right to be fully and directly informed of all docket updates as the true party of interest, without misprision of her legal identity, name-swapping database scripts, or clerical manipulations by the actors behind the automated data communications.

2. **Mandatory Remedy for the Present-Day Electronic Blackout (FRCP 5b):** Plaintiff/Petitioner formally alerts this Court to an ongoing, active electronic blackout and telemetric interception network deployed by the defendants to disrupt the formal process of service. Because the enterprise has systematically weaponized cloned email communication profiles and backdated forwarding data metrics managed by Melissa Stevens and Tracy Grubbs to execute fraudulent substitutions of service behind her back, **all digital or electronic notification routes are structurally compromised, unsafe, and void.**
3. **Formal Demand for Physical Paper Service Protocols:** To establish proper forward movement and enforce due process, Plaintiff/Petitioner demands that this Court issue an immediate order commanding that all future judicial updates, summonses, and responses from any defendant be served **strictly in hard-copy physical paper format via the United States Postal Service Certified Mail** directly to her verified, physically secure mailing address. Any attempt by local court-coordinator networks or the defendants to bypass this paper protocol by transmitting documents to cloned electronic proxy endpoints will be treated as an absolute nullity, a structural fraud on the court, and an active act of retaliation, triggering immediate Article III sanctions.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff/Petitioner **Alexandra Renae Boyer** demands that this Court immediately enter final De Novo Orders:

- Acknowledges and Accepts Plaintiff's ALEXANDRA RENAE BOYER Formal requests for mandatory ARTICLE III JUDICIAL DE NOVO review of the case matter and notices of Adjudicative Facts Pursuant to Federal Rules of Evidence 201 and Plaintiff's requested for formal mandatory equitable remedies AND JUDICIAL NOTICE OF INTERNAL AFFAIRS BLOCKADES PURSUANT TO FED. R. CIV. P. 15(d).
- Scheduling a live **Emergency Status Conference** within forty-eight (48) hours to coordinate enforcement with unconflicted federal and tribal investigating authorities.
- Vacating the Magistrate's recommendations, correcting her legal name on the docket sheet to **Alexandra Renae Boyer** pursuant to Rule 60(a), and appointing **Pro Bono Panel Counsel** under 28 U.S.C. Section 1915(e)(1).
- Issuing an immediate **Emergency Decretal Injunction to Freeze All Assets**, corporate accounts, and pass-through financial registries linked to the private **$260.00 accounting ledger entry**.
- Issuing a **Civil Writ of Habeas Corpus** commanding federal law enforcement or Marshals to physically locate, secure, and return the minor children to her immediate

physical custody, bypassing the backdoored state-level service fraud loops and halting the predatory caretaker schemas.

- To give the Plaintiff, ALEXANDRA RENAE BOYER, to the full INDEPENDENT RECOGNITION as the Absolute, Un-abated and immutable, Real Party in Interest and Formalities (FRCP 17a) in holding the inherent, non-delegable right to be fully and directly informed of all docket updates as the true party of interest, without misprision of her legal identity, name-swapping database scripts, or clerical manipulations by the actors behind the automated data communications.
- Plaintiff/Petitioner, ALEXANDRA RENAE BOYER, moves this Court pursuant to the All Writs Act (28 U.S.C. § 1651) and FRCP 17 to void, enjoin, and remedy any and all unauthorized substitutions of service, fraudulent assertions of representative capacity, or non-consensual conservator/trustee actions initiated against Petitioner's interests outside the rule of law. Petitioner further requests that this protective relief explicitly carve out and preserve, without prejudice or premature disclosure, any current or prospective whistleblower or False Claims Act (Qui Tam) actions brought under 31 U.S.C. § 3730, ensuring that the integrity of any sealed matter remains uncompromised.
- RESPECTFULLY REQUESTS ALL OTHER SUCH REMEDIES; such as the **Formal Request for Interventive Article III Relief:** Petitioner, ALEXANDRA RENAE BOYER, respectfully requests that **the Honorable Judge Charles Eskridge** invoke the court's **inherent Article III powers** to immediately **stay and enjoin the pending state tribunal proceedings** that actively infringe upon their federal rights, while deploying **civil and criminal contempt** sanctions and **structural injunctions** to halt illegal abatements driven by documented bad-faith conduct and criminal activities.

Dated this 6th day of October, 2026.

Respectfully submitted,

Alexandra Renae Boyer

**ALEXANDRA RENAE BOYER, Plaintiff Pro Se**

*Sui Juris Real Party in Interest • Case No. 4:26-cv-06212*

---